UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| TYRAN L. DAVIS, | ) | 5:14CV0956 |
| | ) | |
| Petitioner | ) | |
| | ) | JUDGE SARA LIOI |
| v. | ) | (Mag. Judge Kenneth S. McHargh) |
| | ) | |
| ALAN LAZAROFF, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent | ) | REPORT AND |
| | ) | RECOMMENDATION |


McHARGH, MAG. JUDGE

The petitioner Tyran Davis ("Davis") has filed a petition pro se for a writ of habeas corpus, arising out of his 2011 conviction for felony murder and felonious assault, with a firearm specifications, in the Summit County (Ohio) Court of Common Pleas.  (Doc. 1.)  In his petition, Davis raises two grounds for relief:

1. 6th [Amendment] Right to a fair trial.

2. Adequate Evidentiary Support to instruct jury on Voluntary Manslaughter.

(Doc. 1.)

The respondent has filed a Return of Writ (doc. 9), and Davis has filed a Traverse (doc. 10).

## I. FACTUAL AND PROCEDURAL BACKGROUND

The state court of appeals set forth the following factual and procedural background:

> Tyran Davis shot Steven Myers at least ten times, killing him. A jury acquitted Mr. Davis of murder, but convicted him of felony murder and felonious assault with a firearem specification. The trial court sentenced him to eighteen years to life in prison. He has appealed. This Court affirms his convictions because he was not entitled to a voluntary manslaughter jury instruction in relation to the felony murder via felonious assault charge, he was not prejudiced by the court's failure to give the instruction in relation to the purposeful murder charge, and the trial court correctly overruled his Batson challenge. We reverse in part and remand the matter for resentencing due to plain error in the imposition of multiple sentences for counts all parties agreed should have been merged for sentencing purposes.
>
> BACKGROUND
>
> On the evening of October 8, 2010, Mr. Davis's sister, Denika Davis, went with two other sisters, a cousin, and a friend to the Wilbeth–Arlington Homes to visit Shaneka McBride–Wilson and her children. As they were leaving, Mr. Myers tried to get in their car. Ms. Davis refused to allow it as nobody in the car knew him. Mr. Myers threatened to "cancel" her and threw a drink in her face. Just then, Mr. Myers's girlfriend, Shereene Ford, arrived. Mr. Myers convinced Ms. Ford to physically fight Ms. Davis. After several minutes, the fight ended, and Ms. Davis and her companions left the Wilbeth–Arlington Homes.
>
> Later that evening, Ms. Davis and her friends returned to the complex to resume fighting with Ms. Ford. After a second physical altercation between the two women, Ms. Davis and her friends remained in the parking lot. While this was going on, Mr. Davis was on the west side of Akron at a friend's house. Terrika Cornelius and Jasmein Downing, Mr. Davis's pregnant girlfriend, drove from the scene of the fights to pick up Mr. Davis and take him to the Wilbeth–Arlington Homes.
>
> Several witnesses testified that some of the women watching the fight had tried to intervene to break it up, but Mr. Myers attacked them, causing them to retreat. According to Ms. Cornelius, Mr. Myers "got to

2

hitting people.... He hit everybody except me.... I'm the only female that did not get hit ." Ms. Cornelius testified that Mr. Myers "punched everybody that was close to the fight. He didn't want anybody there." Ms. Cornelius said that, on the way across town, Ms. Downing told Mr. Davis how the fight had unfolded and specifically mentioned that Mr. Myers had punched Ms. Davis and had pushed Tyiesha Shellman. Ms. Shellman, another of Mr. Davis's sisters, was also pregnant at the time.

When Mr. Davis arrived at the housing complex, Ms. Davis, Ms. Ford, and another woman were talking outside of one of the apartments. Meanwhile, across the street, Mr. Myers apparently began taunting Mr. Davis in an attempt to get him to fight with him in the street, but Mr. Davis was not interested. Soon, another physical fight began between Ms. Davis and Ms. Ford. According to Ms. Cornelius, Ms. Downing headed toward the fight, but before she could get there, Mr. Myers punched her. Most witnesses believed that Ms. Downing was trying to break up the fight, but nobody could say for sure. Ms. Downing did not testify.

Several witnesses testified that, ten to thirty seconds before shots rang out, Mr. Myers punched Ms. Downing hard with a closed fist. Ms. Downing fell to the ground and seemed to be unconscious, or at least stunned. Tierra Shellman, another of Mr. Davis's sisters, testified that she yelled, "Bro, he just hit your baby's mama." Witnesses agreed that, prior to the shooting, Mr. Myers was trying to get Mr. Davis to fight him, but had not been successful. At least one witness said that Mr. Davis had denounced the entire situation as "stupid" and was walking away when Ms. Shellman announced that Ms. Downing had been hurt.

Witnesses variously described Mr. Davis's behavior immediately after Ms. Shellman yelled that Ms. Downing had been hit. They said that Mr. Davis walked, walked fast, jogged, or ran across the street while shooting at Mr. Myers. Ms. McBride–Wilson testified that she saw Mr. Davis's face as he "jog[ged]" back up the street toward Mr. Myers, just before he started shooting. She said that Mr. Davis "just looked like himself[.]" When asked if he looked enraged or angry, she said that he did not have any expression on his face. Mr. Davis did not testify.

(Doc. 9, RX 6, at 1-3; State v. Davis, No. 25826, 2012 WL 1080530, at *1-*2 (Ohio

Ct. App. March 30, 2012).)

3

Davis filed a timely direct appeal to his conviction, which raised the following two assignments of error:

> 1. The trial court erred in refusing to instruct the jury on the lesser included offense[s] of voluntary manslaughter and involuntary manslaughter.
>
> 2. The trial court committed reversible error and abused its discretion by denying the Batson challenge submitted by Tyran Davis.

(Doc. 9, RX 4.) The court of appeals affirmed the convictions, over a dissent concerning the first assignment of error, but remanded for resentencing[1]. (Doc. 9, RX 6; Davis, 2012 WL 1080530.)

Davis appealed to the Supreme Court of Ohio pro se, presenting the following two propositions of law:

> 1. The trial court erred in refusing to instruct the jury on the inferior offense of voluntary manslaughter which prejudiced the appellant and denied him his constitutional right to a fair trial.
>
> 2. The trial court committed reversible error and abused its discretion by denying the Batson Challenge submitted by trial Counsel.

(Doc. 9, RX 8, at 7, 9.) Davis also filed an appeal to the Supreme Court of Ohio through counsel, presenting the additional two propositions of law:

> 1. If a defendant stand trial under two or more murder theories for a single homicide, acquittal on one murder theory does not preclude a finding of prejudice resulting from the trial court's improper failure to instruct on an offense of an inferior degree associated with the theory of acquittal.
>
> 2. Because fundamental fairness requires that criminal defendants be afforded a meaningful opportunity to present a complete defense, a

---

[1] Davis was subsequently re-sentenced on May 9, 2012. (Doc. 9, RX 17.)

> trial court may not deny a defendant's request for an instruction to an inferior-degree offense after direct testimony is given to support such an instruction.

(Doc. 9, RX 10.)

The Supreme Court of Ohio accepted the appeal on July 5, 2012. (Doc. 9, RX 12; State v. Davis, 132 Ohio St.3d 1461, 969 N.E.2d 1230 (2012).) The parties filed merit briefs on the issues. (Doc. 9, RX 13, 14, 15.) However, on May 2, 2013, "after the parties [had] fully briefed the issues and presented their oral arguments," State v. Davis, 136 Ohio St.3d 26, 31, 989 N.E.2d 992, 996 (2013) (O'Neill, J., dissenting), the state supreme court ruled that the appeal was "dismissed, sua sponte, as having been improvidently accepted." (Doc. 9, RX 16; State v. Davis, 136 Ohio St.3d 26, 989 N.E.2d 992 (2013).)

### A. Rule 26(B) Applications

On June 27, 2012, Davis filed an application, through counsel, to reopen his appeal pursuant to Ohio App.R. 26(B), claiming ineffective assistance of counsel, for failing to request jury instructions concerning lesser-included offenses. (Doc. 9, RX 18.) The state opposed the motion to reopen because the supreme court had accepted jurisdiction. (Doc. 9, RX 19.) Davis filed a motion to stay his Rule 26(B) application, pending resolution of the supreme court case. (Doc. 9, RX 20.)

5

On July 27, 2012, the state court of appeals denied the application because the application failed to comply with the requirement of a sworn statement of the basis for the claim that appellant counsel was ineffective. (Doc. 9, RX 21, at 3.)

On Feb. 14, 2013, Davis filed a delayed Rule 26(B) application, through counsel, explaining that counsel had been unaware of the court's July 27, 2012, ruling (above), because the court had served the ruling on the prosecutor and Davis' original appellate counsel, but the ruling had not been served on new appellate counsel (who had filed the Rule 26(B) application). During his preparations for oral argument before the state supreme court, counsel discovered the July 27 ruling. (Doc. 9, RX 22, at 2.) The court denied the delayed application on Apr. 24, 2013, ruling: "Mr. Davis's application appears to be a successive application for reopening which is not specifically authorized by App.R. 26(B)." (Doc. 9, RX 24.)

Davis filed this petition for a writ of habeas corpus on May 2, 2014. (Doc. 1.)

## II. HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court. The Supreme Court, in Williams v. Taylor, provided the following guidance:

6

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-413 (2002). See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405. See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

One of the grounds put forward by Davis alleges violations of Ohio law. The question before this federal habeas court is whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Federal habeas

7

relief is not available for a claimed violation of state law, thus any alleged violation of Ohio law or the Ohio Constitution is not properly before this court.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

## III.  STATE LAW CLAIMS

The respondent argues that the memorandum in support of the petition "indicates that Davis's intent is to raise his claim that he was entitled to a jury instruction on voluntary manslaughter.  But a claim about the jury instructions is a quintessential state law claim."  (Doc. 9, at 9-10.)  The respondent contends that such a claim cannot be reviewed in federal habeas.  Id. at 10.

As set forth in the petition, Davis raises two grounds for relief, with supporting facts, as below:

1. 6th [Amendment] Right to a fair trial.
    Supporting facts:  "Defendant arrived on the scene and saw victim punch out pregnant girlfriend and pregnant sister."

2. Adequate Evidentiary Support to instruct jury on Voluntary Manslaughter.
    Supporting facts:  "Defendant was threat[e]ned by victim to [engage] him in a fight, then punch out his girlfriend.

(Doc. 1.)  In his memorandum in support, Davis asserts that he is entitled to habeas relief "because the Trial Court, Summit County Common Pleas, failed to instruct the jury, on Voluntary Manslaughter, although there was sufficient evidentiary evidence to support such instruction."  (Doc. 1, PX 1, memorandum in support, at 1.)

8

Davis argues that it is well-established that voluntary manslaughter is a lesser-included offense to murder and felony murder.  He maintains that the failure to give the instruction violates his 6th Amendment right to a fair trial, and his 14th Amendment due process rights.  In support of his argument, he cites State v. Shane, 63 Ohio St.3d 630, 590 N.E.2d 272 (1992).  Id.

The issue certified for review before the Supreme Court of Ohio in Shane was "the proper allocation of the burden of proof when a judge gives an instruction on voluntary manslaughter in a murder prosecution."  Shane, 63 Ohio St.3d at 631, 590 N.E.2d at 274.  The court took a slightly different approach, yet the case involved state law, and Ohio's voluntary manslaughter statute, Ohio Rev. Code § R.C. 2903.03.  Shane, 63 Ohio St.3d at 633-634, 590 N.E.2d at 275-276.  No federal (or indeed, Ohio) constitutional issues were involved.  The court held:

> . . . that words alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations.  Rather, in each case, the trial judge must determine whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant a voluntary manslaughter instruction.

Shane, 63 Ohio St.3d at 637, 590 N.E.2d at 278.  Thus, Shane provides no support for a claim of a federal constitutional violation.

The majority view is that the failure to instruct on lesser included offenses in noncapital cases, such as this, is not cognizable in federal habeas cases.  Bagby v. Sowders, 894 F.2d 792, 795-797 (6th Cir.) (en banc), cert. denied, 496 U.S. 929 (1990) (citing cases).  The Supreme Court has never held that the Due Process

9

Clause requires instructing the jury on a lesser included offense in a non-capital case. *McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014), *cert. denied*, 135 S.Ct. 1534 (2015). See also Scott v. Elo, 302 F.3d 598, 606 (6th Cir. 2002), cert. denied, 537 U.S. 1192 (2003) (citing Bagby); Campbell v. Coyle, 260 F.3d 531, 541 (6th Cir. 2001), cert. denied, 535 U.S. 975 (2002) (Constitution does not require lesser included offense instruction in non-capital cases, citing Bagby). Davis does not present a Supreme Court case which would establish that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

In addition, an allegation that an instruction may be incorrect under state law is not a basis for habeas relief. Todd v. Stegal, No. 00-2203, 2002 WL 554500 (6th Cir. Apr. 12, 2002) (per curiam), cert. denied, 537 U.S. 981 (2002) (citing Estelle v. McGuire, 502 U.S. 62, 71-72 (1991)). In any event, the state court of appeals ruled that "Davis was not prejudiced by the trial court's refusal to give the requested jury instruction in relation to purposeful murder and the court properly refused to give it. . . " (Doc. 9, RX 6, at 10; Davis, 2012 WL 1080530, at *6.) After reviewing the parties' briefs, and hearing oral argument, the Supreme Court of Ohio did not overturn this decision. (Doc. 9, RX 16; Davis, 136 Ohio St.3d 26, 989 N.E.2d 992.)

Furthermore, this court does not have jurisdiction to consider a federal claim in a habeas petition which was not fairly presented to the state courts. Baldwin v.

Reese, 541 U.S. 27 (2004); Jacobs v. Mohr, 265 F.3d 407, 415 (6th Cir. 2001). To "fairly present" the claim to the state courts, a habeas petitioner must present his claim as a federal constitutional issue, not as an issue arising under state law. Koontz v. Glossa, 731 F.2d 365, 368 (6th Cir. 1984). Davis argued this claim on direct appeal only as a state law claim, not as a federal constitutional claim. See doc. 9, RX 4, at 12-21. Davis relied solely on cases applying Ohio state law. Davis did not put forward any federal constitutional arguments, but simply claimed that the trial court had abused its discretion in refusing to give an instruction on voluntary manslaughter, in view of the provocation involved. See, e.g., doc. 9, RX 4, at 21.

## IV.  SUMMARY

The petition for a writ of habeas corpus should be denied.

The failure to instruct on lesser included offenses in noncapital cases is not cognizable in federal habeas cases.  Bagby, 894 F.2d at 795-797 (citing cases).  The Supreme Court has never held that the Due Process Clause requires instructing the jury on a lesser included offense in a non-capital case.  McMullan, 761 F.3d at 667; Scott, 302 F.3d at 606; Campbell, 260 F.3d at 541. Davis does not present a Supreme Court case which would establish that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## IV.  RECOMMENDATION

The petition for a writ of habeas corpus should be denied.

Dated:   Apr. 24, 2015                              /s/ Kenneth S. McHargh
                                                              Kenneth S. McHargh
                                                              United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).